# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF MISSISSIPPI

## AT THE

## MARCH TERM, 1914.

---

FIDELITY & DEPOSIT COMPANY OF MARYLAND *et al. v.*
WILKINSON COUNTY.

[64 South. 457.]

1. DEPOSITORIES. *Liability. Action. Joinder. Pleading. Admissions.
Deposits. Public funds. Bonds. Reports. Equity. Bill. Parties.
Multifariousness.*

Where a bank as county depository executed two bonds with different sureties to secure deposits during each of the years 1912
and 1913 and the whole amount sued for was due by the bank
and of this amount the two bonds were responsible, each not
being responsible for the entire amount, but only for any defalcation which may have occurred during the year covered by it,
and an accounting was necessary to ascertain the amount for
which each suretly was responsible, in such case the county
was not required to bring separate suits at law on each of these
bonds to recover any defalcation which may have occurred during the life thereof, but was entitled to maintain a single suit
in equity to which all the sureties on both bonds were parties,
in order that complete relief might be granted.

(654)                    [106 Miss.

2. SAME.

Where in such case the county filed a bill in equity against the bank and the sureties on both the bonds, alleging that plaintiff did not know whether any defalcation, other than the failure to pay accrued interest on daily balance during 1912, had occurred or not, an allegation that the bank reported that on January 1, 1913, it had to the credit of the county thirteen thousand five hundred thirty-six dollars and ninety cents, due on deposits for 1912 and that the sureties on the bond for 1913 were liable therefor if the bank in fact had such amount on hand, etc., the bill did not affirmatively admit that there was no defalcation during the life of the 1912 bond other than the bank's failure to pay interest on balance.

3. DEPOSITORIES. *Liability. Reports.*

Where a bank which was a county depository reported that on January 1, 1913, it had to the credit of the county thirteen thousand five hundred and thirty-six dollars and ninety cents, a balance due on deposits for 1912, this did not necessarily indicate that it actually then had on hand that much of the original money deposited with it, or that much actual cash with which to pay the amount admitted to be due, since banks acting as county depositories are not required to keep on hand the actual money deposited or at all times an amount of money equal to the money so deposited, all it is required to do is to account for the money and pay it over when required.

4. EQUITY. *Bill. Parties. Multifariousness.*

A bill by a county against two sets of sureties on two bonds of a bank, which was a county depository, seeking to recover the amount due the county on the failure of the bank, was not multifarious because of the joinder of the two sets of sureties, where an accounting, in which each set of sureties were interested, was necessary; nor was it multifarious because the president and vice president of the bank were joined as parties defendant thereto, where they were simply made parties in their official capacity in order to insure the making of a complete discovery.

5. DEPOSITORIES. *Bonds. Conditions.*

In a suit by the county upon the bonds given by a bank as a county depository, where the bonds provided that the bank should well and faithfully perform the trust reposed in it and should promptly pay all funds and money deposited with it on warrants of proper parties, etc., the bank having suspended payment, closed its doors and was put in the hands of receivers, it was not necessary that the county should allege in its bill

the presentation of warrants in order to sustain a suit for the breach of the conditions of the bonds, since the law does not require the doing of a vain thing.

APPEAL from the chancery court of Wilkinson county. HON. J. S. HICKS, Chancellor.

Suit by Wilkinson county against the Fidelity & Deposit Company of Maryland and others. From an order overruling the demurrer of the surety companies, they appeal.

Appellee, complainant in the court below, filed a bill in chancery making parties defendant the Citizens' Bank of Wilkinson county, its president, vice president, and receiver, and seven surety companies, who were sureties on the bonds of said bank as depository of the funds of Wilkinson county. The surety companies demurred to the bill, the court overruled the demurrer, and they appeal.

*Truly & Truly* and *Jno. R. Tyson,* for appellants.

A bill is multifarious where defendants are joined "who are without a common interest in the subject-matter of the litigation and have no connection with each other." *McIntosh* v. *Alexander,* 16 Ala. 87; 14 Ency. of Pl. & Pr., 200; *Newton Oil & Mfg. Co.* v. *Sessums* (Miss.), 59 So. 9; *Nelms* v. *Brooks* (Miss.), 61 So. 895; *Scottish Union & National Ins. Co.* v. *Warren-Gee Lumber Co.,* 60 So. 1010.

In the last case cited a joint bill was filed by several insurance companies upon separate policies issued by each of them to set aside those policies for alleged invalidity, and to restrain action thereon. The defendants filed cross-bills to enforce the policies. On motion of complainants their bill was dismissed, but on application of defendants their cross-bills were retained, which were demurred to. The court held that neither the original bill nor the cross-bills presented a case for equitable re-

lief, and that therefore the demurrer to the cross-bills should have been sustained.

It further held that the fact that the court below assumed jurisdiction, did not bring the case within the terms of section 147 of the Constitution. Citing *Newton Oil & Mfg. Co.* v. *Sessums*:     The court, among other things said:  ''While it is true that each of these policies contained the co-insurance clause hereinbefore set out, still they are independent contracts, the liability of one company not being affected by that of any other company; and this clause can afford no ground for an accounting, or 'to enforce contribution, for it provides for neither. What one company may be compelled to pay under its contract is of no concern to any of the other companies; this provision of the contract simply provided the measure of each company's independent liability. That each jury in separate suits at law on these policies, might fix the value of the property insured at a different sum is immaterial; for the verdict and judgment in one case could have no effect upon the verdict and judgment in any other case.''

The holding in this case is peculiarly apropòs to the facts alleged in the bill in the case now under consideration by the court. The complainant in this case cannot, of course, invoke the equitable right of contribution which only exists in favor of a surety after he or it has paid the debt. And a jury in separate suits at law upon each of the bonds easily ascertain the liability of each surety company upon the bond made by it. Therefore we insist, as was held in the case last cited, that the complainant's remedy is an action at law upon the bonds, to be brought against each of the surety companies separately and independently of each other. If the surety companies are liable they are liable to the complainant upon separate and independent promises which are purely demands cognizable in a court of law. See, also, *Board*

106 Miss. 42

*of Supervisors of Lauderdale County* v. *Alford,* 65 Miss. 63.

*Frank Johnston,* assistant attorney-general, for the state.

I respectfully submit to the court that there is no question of equity jurisdiction clearer than the doctrine now before the court, that a court of equity has jurisdiction to compel a discovery and force an accounting upon each different set of bonds. Section 161 of the Constitution in the clearest and most explicit terms declares that, "The chancery court shall have jurisdiction, concurrent with the circuit court, of suits on bonds of fiduciaries and public officers for failure to account for money or property received."

It is therefore clear that a court of equity could entertain a suit upon a single bond of any public official or any public authority. In a proper case, according to the general doctrine of chancery procedure, the equity court may entertain one suit on several bonds for public moneys. Section 556 of the Code is but a statutory enactment of section 161 of the Constitution, but altogether aside from the constitutional jurisdiction of the court, and the statutory jurisdiction of a court of equity, the court has on the general principles of equity jurisdiction full and complete jurisdiction of this class of cases. *Whitfield* v. *Evans,* 66 Miss. 489.

Where sureties on different bonds have connected themselves with the principal obligor, a bill making both sets of sureties defendant has been universally held not to be multifarious. Daniels Chan. Procedure, sections 337 and 338; *Lee* v. *Lee,* 55 Ala. 599; *Alexander* v. *Mercer,* 7 Ga. 549; *McDougal* v. *Mattox,* 17 Ga. 52; *Powell* v. *Powell,* 48 Cal. 235; *Duerson* v. *Alsop,* 27 (Gratt.) Va. 229.

In *Gay* v. *Edwards,* 30 Miss. 318, it was expressly held by this court that a court of equity had jurisdiction where there are separate defendants who are responsible for

the entire fund sought to be recovered and where each is liable and the fund sought to be recovered can only be ascertained by a discovery and accounting.    State v. *Brown,* 58 Miss. 835; *Tate and Marshall Counties* v. *Desoto County,* 51 Miss. 588; *Board of Supervisors* v. *Lauderdale County,* 65 Miss. 63.

I will not argue this question further except to submit to the court the observation that each set of sureties on these bonds is equally interested in the proper ascertainment of the respective liability of these different bonds.

Argued orally by *Jeff Truly* and *J. R. Tyson,* for appellant, and *J. W. Cassedy* and *Frank Johnston,* assistant attorney-general, for the state.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree overruling a demurrer, filed by appellant surety companies, to appellee's bill, and was allowed for the purpose of settling the principles of the case.   According to the allegations of appellee's bill, the Citizens' Bank was designated and acted as depository of the funds of Wilkinson county for the year 1912, and was designated as county depository for 1912, and acted as such until the 18th day of January, 1913, when it suspended payment, closed its doors, and was placed in the hands of a receiver.   The bank executed a bond to the county, guaranteeing the faithful discharge of its duties as county depository for the year 1912, and another for the year 1913.   Two of appellant surety companies were sureties on both of these bonds.   One was surety only on the first, and four were sureties only on the second bond.

The purpose of the bill was to collect from this bank, or its receiver, and these surety companies, the money due appellee by the bank as county depository.   In addition to the bank, its receiver, and these surety companies, there were joined as parties defendant to the bill the president and cashier of the bank.   The bill alleged that the county had never been paid the amount due it

by the bank as interest on daily balances; that on the "1st day of January, A. D. 1913, in addition to the interest as above set out, there remained in the hands of the said defendant, the Citizens' Bank of Wilkinson county, as depository, for which its said sureties were responsible, the sum of thirteen thousand five hundred and thirty-six dollars and ninety cents. And on said day, as it was required to do by the law, it reported to the officers of the county that such sum of money was on hand, and the officers of the county believed to be true," and, after reciting the execution of the bonds for the year 1913, continued: "The bonds of the said defendant Citizens Bank of Wilkinson county being accepted, it became and was the depository for said second term, and upon said second term it carried as cash on hand over into said second term, or as due the county over into said second term, the said sum of thirteen thousand, five hundred and thirty-six dollars and ninety cents. The officers of the county believed that said money was on hand as reported, and from information and belief charge that it was on hand and further complainants charge and contend that, it having acted in every respect, the said defendant the Citizens Bank of Wilkinson county, and its sureties for the said year 1913, having reported said money on hand and upon the faith of such report having secured the acceptance of its bond as aforesaid, was and is now estopped from showing that said money was not on hand at that time. That the court upon the hearing may adjust the matter as between the sureties, and if the court may be of the opinion that the said bank and its sureties are not estopped from showing that said money was not on hand at the time as aforesaid, and this being a matter peculiarly within the knowledge of the defendant Citizens Bank of Wilkinson county and its president and vice president and its receiver and necessary to the adjustment of the interest of all the parties, the complainants pray that they be required to disclose if said money was on hand as it should or was the report false

and untrue. That after receiving the said amount on hand as aforesaid, to wit, thirteen thousand five hundred and thirty-six dollars and ninety cents, and during said period covered by said bond, it also received upon deposit other moneys of the county amounting to the full sum of nineteen thousand three hundred and sixty-four dollars and seventy-nine cents, which, together with the amount brought forward from the first period, makes the total amount received by said depository, for which said sureties for the said year 1913 period are responsible, the sum of thirty-three thousand eight hundred and twenty-nine dollars and twenty-six cents, together with two and one-half per cent. interest from the 1st day of January, A. D. 1913, until paid, calculated upon daily deposits as aforesaid.''

The bill further alleged that the bank had paid out some of the funds deposited with it during the year 1913 on legally drawn warrants, but that the amounts thereof were unknown to appellee; and the bank, its receiver, president, and vice president, were called upon for a discovery thereof.

It will be observed that the whole amount here sued for is due by the bank and of this amount the two bonds are responsible; each not being responsible for the entire amount, but only for any defalcation which may have occurred during the year covered by it. Appellant's main contention is that appellee's remedy is separate suits at law on each of these bonds to recover any defalcation which may have occurred during the life thereof. It is clear, however, from the allegations of the bill that appellee does not know whether any defalcation other than the failure to pay interest occurred during 1912 or not, and that fact can be ascertained and the liability *vel non* of each bond therefor established only by the statement of an account and an ascertainment of the financial condition of the bank on the 31st day of December, 1912, or on any date when the money deposited in 1912 should

have been paid over, in accordance with the methods pursued in a court of chancery, in which all of the sureties on both bonds have an equal interest and in any proceeding instituted for that purpose should be parties defendant in order that full, adequate, and complete justice may be done. The case clearly falls within the rule applied in *State* v. *Brown,* 58 Miss. 835; *Gay* v. *Edwards,* 30 Miss. 219; *Board of Supervisors of Lauderdale County* v. *Alford,* 65 Miss. 63, 3 So. 246, 7 Am. St. Rep. 637.

It is contended by appellant, however, that the bill expressly charges that on the 1st day of January, 1913, the bank had on hand all of the money then due by it to the county, and that therefore it affirmatively appears from the bill that no defalcation occurred during the life of the bond for 1912 other than failure of the bank to pay interest on daily balances and, as the bondsmen for 1913 have no interest in the ascertainment of the amount of this interest, that no case for an accounting is made in so far as they are concerned; that appellee's remedy is a suit at law on the bond of 1913 to recover the amount due other than interest on daily balances for 1912; and that this interest should be recovered in a separate and distinct suit on the bond for 1912. There is no merit in this contention for it is clear from the allegations of the bill hereinbefore set out that all appellee meant to charge and in fact did charge is that the bank reported to it that it had on the 1st day of January 1913, to the credit of appellee, the sum of thirteen thousand five hundred and thirty-six dollars and ninety cents, balance due appellee on deposits for 1912, and that the surety companies on the bond for 1913 were liable therefor, if the bank in fact had this money then on hand, or, in event the sureties on the bond for 1913 were estopped from denying that it so had, then the bond for 1913 was responsible therefor.

The report made by the bank to appellee simply indicated that it had the amount named then to its credit

and did not necessarily indicate that it actually then had on hand that much of the original money deposited with it, or that much actual cash with which to pay the amount admitted to be due.  Banks, acting as county depositories, under the present statute are not required to keep on hand the actual money delivered to them by the counties nor to keep on hand at all times an amount of money equal to that deposited with them; all they are required to do is to account for the money and pay it over when required.  The purpose of a bank in becoming a depository is, of course, that it may obtain the money of the county and use it in its business.

The bill is not multifarious because of the joinder of the two sets of surety companies, because, as hereinbefore pointed out, an accounting, in which each set of sureties is interested, is necessary; nor is it multifarious because the president and vice president of the bank are joined as parties defendant thereto.  No relief is asked against them, and they are simply made parties in their official capacity in order to insure the making of a complete discovery, which discovery is necessary in order that the relief prayed for may be obtained.

But it is said that the condition of these bonds is that the bank "shall during the period from the 1st day of January, 1913, to the 1st day of January, 1914, well and faithfully perform the trust deposited in it by such designation and shall promptly pay all funds and moneys deposited with it on the warrant of the lawful parties, and shall well and truly indemnify the said obligee from any and all loss which it may suffer or sustain during the period aforesaid," and that, since the bill contains no allegation that any warrant had been presented and its payment declined by the bank, no breach of the bond is shown, and therefore that the demurrer should be sustained on that ground.  Such an allegation was unnecessary, for the bill specifically alleges, as hereinbefore set out, that the bank "suspended payment, closed its doors,

and was put in the hands of a receiver," from which it appears that the presentation of a warrant would have been a vain and useless thing, the doing of which the law does not require.

*Affirmed, with leave to appellants to answer within thirty days.*