HUTCHINSON COUNTY, Respondent, v. FRASCH, et al, Appellants.

(256 N. W. 128.)

(File No. 7619. Opinion filed July 30, 1934.)

*Wick & Quinn,* of Scotland, for Appellants.

*William J. Metzger,* of Olivet, for Respondent.

WARREN, J. An action was instituted against the defendants on a depository bond executed by the State Bank of Menno, S. D., as principal, and Frasch and others, defendants, as sureties. The bond is in the ordinary form and imposes the usual obligations. That portion of the bond which is in controversy reads as follows: "Now, Therefore, if the said Exchange State Bank of Menno, South Dakota, as such depository, shall faithfully and truly account for all monies which shall come into its hands and possession, and be deposited in it by the County Treasurer of Hutchinson County, South Dakota, and shall in all respects faithfully perform all its official duties as such depository by paying out all monies to deposited with it by the County Treasurer of Hutchinson County, South Dakota, on the written order of the County Treasurer of Hutchinson County, etc. * * *"

In the above portion of the bond there seems to be a mistake in using the word "to." The respondent claims that it should be "so," while the appellant claims that the word "to" should be followed by the word "be," so that that portion of the first paragraph would read as follows: "By paying out all moneys to be deposited with it by the county treasurer." The wording as contended for by the respondent would be as follows: "Such depository by pay-

ing out all moneys so deposited with it by the county treasurer." The facts were stipulated by the respective parties. From the stipulated facts it would appear that this bond in question took effect on the 8th day of February, 1927. Prior to the giving of this bond the State Bank of Menno had operated and received county deposits under a bond of similar form and character, and had in its possession about $8,000 on the 8th day of February, 1927. After this last bond was given there was deposited in the aggregate the sum of $41,748.44, exclusive of the $8,000 in the bank February 8, 1927, and withdrawn during said time sums which amounted in aggregate to some $39,123.58, and that as early as the 17th of May, 1927, as shown by Exhibit A, which reveals the various deposits, withdrawals and balances of moneys by the county in the Exchange State Bank of Menno, S. D., more money had been withdrawn from said bank than was on deposit at the time this said last bond took effect. The exhibit and findings further show that the balance in the bank on September 27, 1927, reached its lowest point, which was $2,000. It is the contention of appellant that this $2,000 balance on September 27, 1927, should be considered as a part of the $8,000 which was in the bank when the bond took effect; that the bond only secured deposits made after the date it became effective; and that this $2,000 is not, therefore, chargeable to the present sureties.

Appellants contend that the $2,000 of the county's money on deposit in the bank prior to the execution of the last bond is not a liability within the conditions expressed in said last bond, and that the $2,000 are not chargeable to the present sureties. As we view it, the bond was given to accomplish the public purpose of protecting public funds, and that the new bond was given for the purpose of covering all the fund which might then be on deposit within the bank or might be deposited in the future. The obligors failed to make clear and specific provisions and limitations as to what particular funds or deposits they were to be held liable for; whether or not they would be liable for only specific deposits to be made at and after the execution of the bond, or that they would also deem themselves liable for funds which were on deposit. Therefore, without such express indication and reservation limiting their liability expressly and specifically to future deposits, we are unable to share the views of appellants.

This court in the case of Hughes County v. Security State Bank of Blunt, 55 S. D. 167, 225 N. W. 298, indicated the rule of law which must govern the liability of principal and surety in bonds such as in the case before us. In a later decision this court in Davison County v. Western National Bank of Mitchell, 58 S. D. 141, 235 N. W. 370, held that money on deposit at the time the bond was executed would be covered by the bond. The bond in the instant case imposes the obligation of accounting for all moneys which shall come into the possession of the bank and be deposited in it by the county treasurer. It seems that under the terms of the bond, "account for all monies which shall come into its hands and possession" has a definite meaning, and does not mean merely prospective deposits, but means money which is on deposit at the time the bond is given. The relationship between the bank and the county is somewhat different than that between a principal and agent. In this case the county was a general depositor of funds, and by the act of depositing the reciprocal obligations of creditor and debtor arose. The money in the bank which had been deposited and to be deposited became the property of the bank for the repayment of which on demand it became liable; the obligation therefore of the surety in this case to pay the debt of the bank. Brown et al v. Board of Commissioners of Wyandotte County, 58 Kan. 672, 50 P. 888.

In Hughes County v. Security State Bank of Blunt, supra, this court at some length reviewed certain Kansas, Mississippi, and Wisconsin decisions, even going so far as to consider the grammatical clause of "which may be deposited," and concluded that the conditions of the obligation covered deposits in the bank existing at the time of its execution and approval.

There is some contention between appellants and respondent as to what appears to us to be a typographical error, in that the word "to" should have been the word "so." We do not believe under the evidence and record before us that to say "to be deposited" is a fair construction within the bond, but hold that the meaning therein should be interpreted as "so deposited."

Appellants have called our attention to the fact that we said in Hughes County v. Security State Bank of Blunt, supra, that the exact terms of the depository bond did not appear in the opinion in Fidelity & Deposit Co. of Maryland v. Wilkinson County,

109 Miss. 879, 69 So. 865, but that the terms of the bond appeared in that case upon its first appeal in 106 Miss. 654, 64 So. 457, 459, Ann. Cas. 1916B, 1248. It is true that the bond in the Fidelity & Deposit Co. v. Wilkinson County, supra, did fix the liability as follows: " 'Shall during the period from the 1st day of January, 1913, to the 1st day of January, 1914, well and faithfully perform the trust reposed in it by such designation and shall promptly pay all funds and moneys deposited with it on the warrant of the lawful parties, and shall well and truly indemnify the said obligee from any and all loss which it may suffer or sustain during the period aforesaid. * * * ' "

It will be observed that a definite period of liability was fixed within that bond. The court, however, in its opinion reported in 109 Miss. 879, 69 So. 865, 868, with that limitation in mind, held that the surety was liable upon moneys which had been deposited previously to the giving of the bond, in the following language:

"Permitting the bank to retain the money deposited with it when the new arrangement for the year of 1913 was made, instead of requiring it to then pay the money into the county treasury, was the equivalent in all respects of the county then depositing it with the bank. When a new arrangement is made with a county depository, ordinarily it would be a vain and useless thing to require it to pay the money then due by it to the county into the county treasury, and for the treasurer to then immediately pay it over again to the bank. When appellants executed the bonds here in question, they did so with the full knowledge that a large part of the banking business is a mere matter of bookkeeping. One of the purposes for the execution by the bank of the bonds of 1913 was that it might not then be called upon to pay to the county the money due it."

From the foregoing it may be assumed that even though this court said that the terms of the bond in the Mississippi case were not contained in the opinion cited, the result would have been the same.

From the examination of the record before us we are of the opinion that the findings, conclusions, and judgment of the trial court must be sustained.

The order and judgment appealed from are affirmed.

POLLEY and RUDOLPH, JJ., concur.

ROBERTS, P. J., concurs in affirmance.

CAMPBELL, J., concurs specially.

CAMPBELL, J. (concurring specially). It is found as a fact in this case that on the effective date of the bond sued upon (February 8, 1927) there was county money in the bank to the extent of $8,000 which had been placed in the bank by virtue of a previous designation thereof as depositary, for which previous designation the bank had also furnished a bond with other than the present sureties. It would hardly be questioned but that on February 8, 1927, the prior bond was responsible for this $8,000, which responsibility did not vanish by virtue of the new designation and new bond. I am not aware of any contemplation of law or intention of the parties that this $8,000 should be doubly bonded, and the language of the present bond is certainly not explicit to that effect. Both the attendant circumstances shown by the record and the language of the bond are distinguishable in the present case from the situations presented in Hughes County v. Security State Bank (1929) 55 S. D. 167, 225 N. W. 298, and Davison County v. Western National Bank (1931) 58 S. D. 141, 235 N. W. 370, and I am extremely doubtful whether the rule of those cases should have application here.

However, I do not believe we need to determine in this case whether or not the bond sued upon became liable for the $8,000 already on deposit when it was given. Appellants have predicated their case, both in the court below and in this court, on one single contention; namely, that the judgment rendered against them is excessive by the amount of $2,000. If they are unable to establish that the judgment appealed from is excessive to that extent, then upon this record it must be affirmed.

Appellants bottom their contention upon two legal propositions: First, that their bond is not liable for the deposit of $8,000 already existing when it was given; and, second, that the doctrine of "first in first out" is not applicable to the case of an open bank account embodying deposits, some of which are bonded by one surety and others by a separate surety.

An analysis of the bank account in question taken from the findings of fact, covering the period from the giving of appellants'

bond (February 8, 1927) to the closing of the bank (December 24, 1927), discloses the following summarized information:

On deposit February 8, 1927 ................$ 8,000.00
Withdrawals up to March 8 ......................  4,000.00

Balance on March 8, 1927 ...................  4,000.00
Deposits March 17 to May 17 ............... 19,991.67

Balance on May 17, 1927 ................... 23,991.67
Withdrawals May 17 to September 27......... 21,991.67

Balance September 27, 1927 ................  2,000.00
Deposits October 24 to November 9.......... 21,756.77

Balance November 9, 1927 ................. 23,756.77
Withdrawals thereafter ................... 13,131.91

Balance when bank closed ..................$10,624.86

Let us assume that the prior bond was liable for the deposit of $8,000 which was in the bank on February 8, and that appellants' bond never became liable therefor, and let us for convenience designate the $8,000 as old money and the subsequent deposits for which appellant's bond was concededly liable as new money.

It will be observed that after February 8, before any new money was deposited, $4,000 was withdrawn, leaving the balance on March 8, $4,000, which of course was old money. Before any more withdrawals were made there were deposited $19,991.67, which was new money, so that the balance of $23,991.67 on May 17 consisted of $4,000 old money and $19,991.67 new money. Before any further deposits were made there were withdrawals to the amount of $21,991.67, reducing the balance on September 27 to $2,000.

If the rule of "first in first out" were applied, the withdrawals of $21,991.67 between May 17 and September 27 would first exhaust the old money of $4,000 and then apply on the new money of $19,991.67 to the extent of $17,991.67, and the balance of $2,000 which was left on September 27 would be deemed new money. Appellants contend, and I believe rightly, that if the bal-

ance of $23,991.67 on May 17 consisted of $4,000 old money for which the prior surety was liable and $19,991.67 new money for which appellants were liable, the subsequent withdrawals of $21,-991.67 should not be applied first to take up the $4,000 of old money; citing particularly the decision of Mr. Justice Lurton in the case of first National Bank v. National Surety Co. (C. C. A. 1904) 130 F. 401, 66 L. R. A. 777. Appellants then invoke the decision of Mr. Justice Lurton as justification for applying what amounts in substance to a rule of "last in first out." The facts in the National Surety Case are quite different from the instant facts, and I do not believe that that case is any authority for what appellants undertake to do here. There being no designation of any particular deposit against which the checks were drawn, it seems to me just as inequitable, so far as concerns the two sureties, to apply a rule of "last in first out" as to apply a rule of "first in first out," and if an effort is to be made to deal equitably with the two sureties it seems to me it can only be done by charging the withdrawals ratably against the respective deposits in proportion to their amounts, and therefore the withdrawals of $21,991.67 between May 17 and September 27 should be charged 4,000 parts against the old money and 19,991.67 equal parts against the new money. This would reduce the old money by $3,664 and the new money by $18,327.67, and the $2,000 balance on September 27 would not be deemed either old money or new money in its entirety, but would be deemed to consist of $336 old money and $1,664 new money. Thereafter, between October 24 and November 9, deposits were made to the amount of $21,756.77, leaving a balance on November 9 of $23,756.77, which balance would be deemed to consist of $336 of old money and $1,664 plus $21,756.77, or $23,420.77 of new money.

Thereafter withdrawals occurred in the amount of $13,131.91. Applying these withdrawals ratably in the same fashion, $171.36 would be charged against the old money and the balance, or $12,-960.55, against the new money, whereby the balance on hand when the bank closed in the sum of $10,624.86 would be deemed to consist of $164.64 of old money remaining from the money already in the bank on February 8, 1927, and $10,460.22 of the new money deposited in the bank between February 8 and its closing.

Therefore, conceding that the prior bond was liable for the

initial $8,000, and that appellants' bond never became liable therefor, and conceding that since the rights of two sureties were involved, withdrawals should be charged against the respective deposits, not on the principle of "first in first out," but in such a manner as to do equity between the sureties, nevertheless the judgment rendered herein is not in any event excessive by more than $164.64, together with a little interest.

In other words, assuming nonliability of appellants for the initial $8,000 and assuming equitable application of withdrawals against deposits rather than the adoption of the rule "first in first out," nevertheless appellants have failed to establish their contention (and it was their sole contention on this record) that the judgment against them was excessive by $2,000. Upon these grounds, I concur in the affirmance of the judgment and order appealed from.